STATE OF MINNESOTA  )
                    ) ss.    **AFFIDAVIT**
COUNTY OF HENNEPIN  )

Mitchell Rhiel, being duly sworn, deposes and states as follows:

1.  I am a licensed police officer and member of the St. Paul Police Department and have been so since October of 2017. Prior to working in St. Paul, I was a licensed police officer in the State of Wisconsin for six years. I am licensed and certified by the Minnesota Peace Officer's Standards and Training Board. I am currently assigned to the Major Crimes Division, specifically the Gang- Gun Unit. I am also assigned as a Task Force Officer with Homeland Security Investigations (HSI). My daily duties are to investigate a wide variety of crimes/calls that include but are not limited to: Fugitive apprehension, homicides, aggravated assaults, terroristic threats, narcotic trafficking and possession, kidnapping, simple assaults, robberies, weapon trafficking and incidents, harassments, traffic stops, and numerous other types of crimes against persons, society, and property. I have executed numerous search warrants that have resulted in the recovery of evidence, substantially lending to the successful prosecution and conviction of individuals both state and federally. I have conducted numerous investigations that have led to arrests and convictions of criminals. I have received specialized training and attended classes on criminal investigations,

street crimes, gangs and gang crimes. One of my duties is to recognize and analyze crime patterns by the type of crime, the time the crime was committed, and the location and method used to commit the crime.

2. This affidavit is submitted in support of a complaint charging Mustaf Abdullahi FARAH with possessing with the intent to distribute cocaine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

3. The facts set forth herein are based on my own personal observations, my review of police reports, and conversations I have had with other law enforcement personnel. The facts set forth herein do not include the complete facts related to this investigation, just those facts necessary to support probable cause for purposes of the Complaint.

## PROBABLE CAUSE

4. On September 11, 2025, the Minneapolis–St. Paul Airport Police Department intercepted a package being shipped by Federal Express. The package was addressed to "Mohamad Ahmed" at 1497 10th Street NW #2XX (redacted), New Brighton, Minnesota. A FedEx employee had notified the Airport Police Department that FedEx had conducted a routine inspection of the package pursuant to FedEx policy and had found that it contained a large

amount of what appeared to be controlled substances. The package weighed approximately 9.1 pounds.

5. Airport police officers conducted a field test of the substance inside the package. The field test indicated the presence of cocaine. Airport police officers notified the Ramsey County Sheriff's Office.

6. A Ramsey County investigator checked management records and determined that the apartment was associated with three individuals: FARAH and two other adult men: a man with the initials A.A.H. and a man with the initials A.A.S. A New Brighton officer contacted the apartment manager and learned that FARAH, A.A.H., and a third man (with the initials A.N.F.) lived in the apartment. FARAH was known to law enforcement and was suspected to be associated with a known drug trafficking organization.

7. On September 10, 2025, Ramsey County investigators obtained an anticipatory warrant to search the apartment at 1497 10th Street NW and planned to make a controlled delivery of the package. The contents of the package were removed and replaced with a non-controlled substance except for 118 grams of the cocaine from the original contents.

8. On September 12 at about 11:15 a.m., an undercover officer dressed as a FedEx employee delivered the package to the apartment. The undercover officer rang the doorbell to Apartment 2XX, and FARAH exited onto the balcony to talk to the undercover officer. FARAH confirmed that he

lived in Apartment 2XX, then came down to the door. The undercover officer handed the package containing the 118 grams of cocaine to FARAH. Once the delivery was made, law enforcement officers executed the warrant to search the apartment.

9. Law enforcement discovered that FARAH was the sole occupant of the apartment at the time of the search. Law enforcement officers found the delivered package, which had not yet been opened, in the apartment's kitchen. Law enforcement officers also found the following suspected controlled substances:

   a. Three bricks of what appeared to be cellophane wrapped cocaine in the SW bedroom

   b. Blue, orange, and white pills in a postal envelope in a box on the floor of the kitchen.

   c. Miscellaneous pills and suspected hashish oil in a cigarette box in the kitchen.

   d. A duffel bag in the SW bedroom containing zip lock bags of blue pills (including blue pills in "tie-off" baggies commonly used in fentanyl distribution), white pills, blue powder, white powder, and a green leafy substance.

   e. Bags of blue pills, orange pills, and white powder in the kitchen.

10. Law enforcement officers also found an FN .45 caliber pistol bearing serial number 61DZZ02987 in the SW bedroom, as well as a black bag with firearm accessories.

11. Law enforcement officers found other items associated with drug trafficking, including a blender, baggies, and scales. Officers also found residential documents in FARAH's name.

12. Law enforcement officers spoke to FARAH pursuant to a rights advisement and waiver. FARAH said he was the only person who lived in the apartment and had been living there for five years. FARAH denied any involvement in drugs and claimed to be confused by the situation.

13. Officers of the St. Paul Police Department conducted field tests of substances recovered from the apartment. One package taken from three, individually wrapped packages of white powder from the SW bedroom tested positive for cocaine. That one package weighed approximately one kilogram. Blue pills found inside the duffel bag tested positive for fentanyl with a net weight of approximately 551 grams.

14. The .45 caliber firearm was located the firearm in the SW bedroom near the cocaine and fentanyl. I know in my training and experience that firearms are tools of the drug trade, used among other reasons to protect drugs and cash, to protect territory, and to enforce sales.

15. I further know in my training and experience that amounts of cocaine and fentanyl were consistent with distribution amounts and were far larger than personal-use amounts.

16. Based on the foregoing, there is probable cause to believe that Mustaf Abdullahi FARAH committed the offense of possessing with the intent to distribute cocaine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

Further your Affiant sayeth not.

_____
Mitchell Rhiel
Taks Force Officer, HSI

SUBSCRIBED and SWORN before me
by reliable electronic means via FaceTime
and email pursuant to Fed. R. Crim. P. 41(d)(3) on
September 15, 2025:

_____
DAVID T. SCHULTZ
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MINNESOTA