UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-385 (DSD/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MUSTAF ABDULLAHI FARAH,<br>a/k/a "Mohamed Ahmed,"<br><br>　　　　　Defendant. | **GOVERNMENT'S OMNIBUS PRE-HEARING RESPONSE TO THE DEFENDANT'S DISCOVERY MOTIONS AND MOTION TO SUPPRESS EVIDENCE** |

　　The United States of America, by and through its attorneys Daniel N. Rosen, United States Attorney for the District of Minnesota, and Carla J. Baumel, Assistant United States Attorney, hereby submits its Omnibus Pre-hearing Response to defendant Mustaf Abdullahi Farah's pending motions, which include: (1) Defendant's Motion for Supplemental Discovery (ECF No. 28); (2) Defendant's Motion to Suppress Evidence Obtained by Search and Seizure (ECF No. 29); and (3) Defendant's Motion for Discovery of DNA Evidence (ECF No. 30). As detailed herein, Mr. Farah's discovery motions are either premature or moot. In addition, Mr. Farah's motion to suppress should be denied because FedEx acted independently with no government intervention in seizing and discovering cocaine in Mr. Farah's drug-laden package. It wasn't until after FedEx found the drugs that they called airport police in the first instance. Because law enforcement acted at FedEx's direction in field testing suspected drugs that FedEx had already detained based on the common carrier's own suspicions, the challenged seizure comports with the Fourth Amendment and the Court should deny Mr. Farah's Motion to Suppress.

I.   BACKGROUND

On September 11, 2025, Minneapolis Airport Police Department (APD) Sergeant Jeffrey Trevino was contacted by FedEx Ground Security Officer Cameron Beyer in response to the seizure of a suspicious parcel. FedEx identified this parcel at the FedEx Ground facility in Mahtomedi, Minnesota. Based on its policies and procedures, FedEx seized and opened the parcel. Mr. Beyer told APD Sgt. Trevino that that upon inspection of the suspicious parcel, he found four brick-shaped objects of compressed white powder that he suspected were controlled substances.

After FedEx called the APD, Sgt. Trevino traveled to FedEx. There, he met with Mr. Beyer at the security office located at the main employee entrance. Mr. Beyer showed Sgt. Trevino the parcel—which had already been opened—and its contents. Sgt. Trevino observed in plain view four-kilogram sized bricks of compressed white powder wrapped in clear plastic. These bundles were further wrapped all together with plastic wrap.

Using a TruNarc testing device, Sgt. Trevino conducted a field test of the white powder from one of the bricks. It tested positive for the presence of cocaine. Upon reviewing the result of this field test, Sgt. Trevino notified Ramsey County Violent Crime Enforcement Team (VCET) about the parcel and the narcotics found inside. Sergeant Trevino transported the parcel and the cocaine bricks back to the APD and weighed the drugs—it totaled to 9.1 pounds of cocaine.

Based on this information, Ramsey County VCET began to investigation the address associated with the parcel and the intended recipient. The parcel's intended recipient was "Mohamad Ahmed" at XXXX 10th Street NW, Apartment 201, in New

Brighton, Minnesota.  Law enforcement discovered three individuals associated with the target address: the defendant (who had a Minnesota driver's license registered to the parcel's intended address); Abdishakur Abdi Hassan (who also had a Minnesota driver's license registered to the parcel's intended address); and Abubakar Ahmed Saifleh (who had been cited for a noise violation at the parcel's intended address). Police next contacted the landlord at XXXX 10th Street NW who informed police that, according to their records, the defendant, along with "Abdishakur Hassan" and "Abdikarin Noor Farah", were noted as "residents" of that unit. That afternoon, Ramsey County VCET applied for an anticipatory search warrant at the parcel's intended residence. Ramsey County Judge Andrew Gordon signed that warrant on September 11, 2025. The defendant does not challenge that warrant.

The following day, on September 12, 2025, Sgt. Trevino transferred custody of the drugs and parcel to Ramsey County VCET. Once there, law enforcement placed a representative sample of cocaine (approximately 105 grams) inside the original package. Law enforcement conducted the controlled delivery with an undercover agent dressed as a FedEx agent. When law enforcement first arrived, no one answered the attempt to contact the occupant at XXXX 10th Street NW, Apartment 201. However, after the undercover FedEx delivery driver walked away and returned to his vehicle, Mr. Farah emerged from the unit, waved down the agent, and accepted the package. Law enforcement executed the warrant immediately thereafter.

Mr. Farah was alone in the residence. After being read his *Miranda* rights, he repeatedly explained to law enforcement that he had lived in Unit 201 for several years and that he lived by himself. He was a truck driver.

Law enforcement seized the FedEx parcel used for the controlled buy along with 3 additional kilo-seized packages of cocaine, several baggies of blue, white, and orange pills (some of which were plainly packaged for sale), a .45 caliber pistol, firearm accessories, and several indicia of distribution (baggies, several blenders filled with white and blue residue, and scales). Some of these drugs were in the kitchen and indicia of distribution were in the kitchen. More drugs and the gun were in a bedroom where Farah's mail was recovered. In total, over a dozen bags of narcotics seized amounted to more than 7,215.52 grams of cocaine, 2,412.72 grams of marijuana, approximately 7,670 M30 fentanyl pills, and 142.89 grams of Xanax.

## II.   MOTION FOR SUPPLEMENTAL DISCOVERY (ECF No. 28)

Mr. Farah asks the Court to compel the government to disclose what is claims are "missing documents" and "all investigative reports…that at all relate to the defendant or the address" where he lived, including information that Mr. Farah "was associated with a known drug trafficking organization in the Twin Cities." (ECF No. 28 at 2 and 5). He also requests FedEx documents along with records of communications between law enforcement and FedEx regarding the parcel in this case. (ECF No. 28 at 5-6.) Mr. Farah's motions should be denied.

First, the "missing" documents Mr. Farah identified are duplicate documents. The government and its support team routinely review and de-duplicate discovery datasets

4

received from law enforcement. Such efforts were undertaken in this case. Even though duplicated documents received bates stamps in the document management system, we do not produce those duplicates in the interest of efficient and prompt discovery review. There are no "missing" documents—this motion should be denied.

Second, Mr. Farah's request to obtain discovery on a separate grand jury investigation should denied. The government indicted Mr. Farah for the narcotics and parcel activity that took place at his apartment on September 12, 2025. His indictment contains no conspiracy allegations. The fact that he became known to law enforcement several months prior because two informants identified him as connected to a fentanyl trafficking ring does not warrant wholesale production of a separate case file. Those informants are not material witnesses. They will not testify at trial. A fishing expedition into a conspiracy for which Mr. Farah is not charged, and that ended months prior to his conduct in this case, would stretch the discovery rules beyond meaningful limits. Nonetheless, the government will produce any documentary discovery from that investigation that links directly to Mr. Farah (notably, whether discovery of that nature actually exists has not been determined). In addition, the government has asked law enforcement agencies to gather any reports regarding Mr. Farah's address and past parcel shipping activity. The search for that information is ongoing. Accordingly, Mr. Farah's motion should be denied as moot.

Last, Mr. Farah seeks FedEx documents or communications from the government. The government does not have in its possession any documents from FedEx. Nor are there any written communications between FedEx and law enforcement. Mr. Farah must avail

himself of Rule 17 if he seeks third party materials. And he can ask FedEx about its communications with APD during the hearing. His motion should be denied.

### III.  MOTION FOR DISCOVERY OF DNA EVIDENCE (ECF No. 30)

Mr. Farah asks the Court to compel the government to disclose "documents and materials pertaining to all DNA evidence that relates to this case or the defendant." (ECF No. 30 at 1.) Specifically, he asks the government to produce, *inter alia*, the complete DNA case file, lab protocols, work instructions, chain of custody and related documents, and several underlying software and data process materials. His request is premature.

DNA analyses of the drug packaging and firearm are pending with the Minnesota Bureau of Criminal Apprehension. Absent complete analyses, the government cannot produce all the documents Mr. Farah requests—in other words, the documents that the defendant requests do not yet exist because the underlying testing is ongoing. Of course, the government will produce to the defendant all of the laboratory results in the normal course of discovery pursuant to its obligations under Rule 16. When those results, and underlying case files are available, the government will transmit them to defense counsel.

### IV.  MOTION TO SUPPRESS (ECF No. 29)

Mr. Farah has moved to suppress the drug evidence in this case because "[t]here is a significant issue whether G.S. Beyer [with FedEx] was acting as an agent of the government." (ECF No. 29 at 6.) Although Mr. Farah has no basis to suggest that "there was any direction by law enforcement to FedEx Ground Security at the Mahtomedi facility to be on the lookout for and search packages addressed to the defendant or his residence," Mr. Farah nonetheless requests a hearing on this Motion. He requests three witnesses to

accomplish this task: the FedEx officer (Mr. Cameron Beyer), APD Sgt. Jeffrey Trevino, and Ramsey County VCET Investigator Cody Amberg. Such a sweeping request for witnesses in this straightforward case is unnecessary under the facts. Nevertheless, the government will agree to produce both Mr. Beyer and Sgt. Trevino. The government, however, does not intend to produce Investigator Amberg.

Requiring Investigator Amberg to testify would not resolve any issues of fact implicated by Mr. Farah's motion. First, there is no suggestion anywhere that FedEx had direct contact with Ramsey County VCET in relation to this parcel or this case. In addition, FedEx never called or contacted law enforcement (i.e., the APD) until the defendant's package had already been detained and searched. FedEx called APD (and only APD) after it *found* compressed, sealed bricks of white powder. Second, as he stated during nearly an hour of testimony at the preliminary and detention hearing, Investigator Amberg had nothing to do with the broader fentanyl investigation where Mr. Farah's name/identity were brought to law enforcement attention. Third, and relatedly, Investigator Amberg did not even learn about Mr. Farah's connection to a broader fentanyl trafficking ring until St. Paul police contacted him the day *after* FedEx seized this parcel. Accordingly, Investigator Amberg will have no relevant testimony bearing on whether FedEx was acting as an agent of the government when it seized Mr. Farah's parcel and found cocaine inside on September 11, 2025.

As to the legal issue, like Mr. Farah acknowledges, FedEx is a common carrier. As such, it is not subject to the strictures of the Fourth Amendment, and it need not have reasonable suspicion prior to diverting a package for inspection. *See Illinois v. Andreas*,

7

463 U.S. 765, 769 n.1 (1983) ("Common carriers have a common law right to inspect packages they accept for shipment, based on their duty to refrain from carrying contraband."). Moreover, "[t]he arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search by the carrier into a government search subject to the Fourth Amendment." *Id*. at 769 n.2. Here, FedEx found a suspicious package. Per its policies, it opened that package and found four, sealed bricks of white powder. That discovery was more than sufficient to hold the package for further investigation.

Mr. Farah has no basis to suggest FedEx acting as a government agent when it decided to detain the packages for inspection. *See United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004) (discussing factors to consider in determining whether private citizen was acting as an agent of the government: "whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request."). FedEx routinely decides, based on research and trends, to subject the packages to additional screening because it believes they may contain controlled substances. That is what happened here. FedEx found a suspicious parcel, opened it, and found suspected controlled substances. FedEx called APD, and APD field tested the drugs. The tests were positive. APD seized the parcel and called local investigators.

Moreover, APD Sgt. Trevino's arrival at the FedEx facility did not turn the private seizure into a government seizure for purposes of the Fourth Amendment. *C.f. Illinois*, 463 U.S. at 769 n.2 ("The arrival of police on the scene to confirm the presence of contraband

and to determine what to do with it does not convert the private search by the carrier into a government search subject to the Fourth Amendment."); *see also United States v. Zacher*, 465 F.3d 336, 338-39 (8th Cir. 2006) (holding no seizure occurred when drug-interdiction officers at a FedEx facility had a narcotics dog sniff a package); *United States v. Vasquez*, 213 F.3d 425, 426 (8th Cir. 2000) (same). Acting at FedEx's request, law enforcement investigated the package after being called by FedEx by performing a field test on the white powder. But, APD did not deprive FedEx of their custody of the parcel until after that test was performed. *See United States v. Green*, 9 F.4th 682, 689 (8th Cir. 2021) (citing *United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005)) (holding that law enforcement did not meaningfully interfere with a possessory interest where packages remained in FedEx custody and where law enforcement acted at FedEx's direction). It was only after the field test revealed the presence of cocaine that law enforcement seized the packages at issue. *See Green*, 9 F.4th at 690 ("[The] [d]etective . . . did not seize the box until after [the K-9] alerted to its contents, at which point there was clearly reasonable suspicion to support the seizure.")

Accordingly, the government will present testimony from APD Sgt. Trevino on the limited issue of his response to FedEx's request for assistance regarding Mr. Farah's drug package on September 11, 2025. It will also produce FedEx Officer Beyer. Any subpoena process to additional individuals would enable a baseless fishing expedition.

## V. CONCLUSION

For these reasons, and for reasons further stated in the anticipated post-hearing briefing, the government respectfully requests the Court deny Mr. Farah's discovery motions and motion to suppress.

Dated: December 10, 2025                      Respectfully Submitted,

                                              DANIEL N. ROSEN
                                              United States Attorney

                                              *s/ Carla J. Baumel*

                                              BY: CARLA J. BAUMEL
                                              Assistant U.S. Attorney